Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Theodore W. Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Alyssa Brown (SBN 30133)
*abrown@ahdootwolfson.com*
Sarper Unal (SBN 341739)
*sunal@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| HEIDI FINKE, individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **<u>JURY TRIAL DEMANDED</u>** |
| EPISOURCE, LLC, | |
| Defendant. | |

Plaintiff Heidi Finke ("Plaintiff") brings this Class Complaint against Episoure, LLC ("Defendant") and alleges, upon personal knowledge as to her own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted with sensitive Personally Identifiable Information[1] ("PII") and Protected Health Information ("PHI", and collectively with "PII", "Private Information") that was impacted in a data breach that Defendant publicly disclosed in June 2025 (the "Data Breach" or the "Breach").

2.      Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information.

3.      Defendant is a provider of risk adjustment services, software, and solutions for health plans and provider groups, including Sharpe Healthcare.

4.      Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5.      On or about February 6, 2025, Defendant became aware of a suspicious activity its IT Network.[2] In response, Defendant launched an investigation to determine the nature and scope of the incident.[3]

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.
[2] *Episoure Notice of Data Breach* (*Template*), Cal. Off. of the Att'y Gen., https://oag.ca.gov/system/files/Episoure%20-%20Individual%20Notification%20Templates%20-%20CA.pdf (last visited June 18, 2025).
[3] *Id.*

6.    Upon information and belief, Defendant's investigation determined that the following types of Private Information may have been compromised in the Data Breach: name, address, phone number, email, data of birth, health insurance data (such as health plans/policies, insurance companies, member/group ID numbers, and Medicaid-Medicare-government payor ID number), and health data (such as medical record numbers, doctors, diagnoses, medicines, test results images, care, and treatment).[4]

7.    On or around June 6, 2025, Defendant started sending notice letters to impacted individuals.[5]

8.    Defendant failed to take precautions designed to keep individuals' Private Information secure.

9.    Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information it collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

10.    Defendant admits that information in its system was accessed by unauthorized individuals, though it provided little information regarding how the Data Breach occurred.

11.    The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

12.    Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted

---

[4] *Id.*
[5] *Id.*

information it maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

13.    As a result of Defendant's inadequate digital security and notice process, Plaintiff's and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

14.    Plaintiff brings this action on behalf of herself and all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendants' conduct amounts to at least negligence and violates federal and state statutes.

15.    Plaintiff brings this class action lawsuit on behalf of herself all those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access by an unknown third party and precisely what specific type of information was accessed.

16.    Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself, and all similarly situated individuals whose Private Information was accessed during the Data Breach.

CLASS ACTION COMPLAINT

17.     Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

18.     Plaintiff is a citizen and resident of San Diego, California.

19.     Defendant is a limited liability company organized under the laws of the State of California, maintaining its principal place of business at 500 West 190th Street, 4th Floor, Gardena, California, 90248.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Members of the proposed Classes are citizens of different states than Defendant, and there are over 100 putative Class Members.[6]

21.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District, regularly conducts business in this District, and thus, has sufficient minimum contacts in this District.

22.     Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

23.     Defendant is a provider of risk adjustment services, software, and solutions for health plans and provider groups.

---

[6] *Data Security Breach Reports*, Episource, LLC, OFFICE OF TEXAS ATT'Y GEN., https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last visited June 13, 2025).

CLASS ACTION COMPLAINT

24.    Upon information and belief, Defendant made promises and representations to individuals, including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

25.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

26.    As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' Private Information from disclosure to third parties.

**B. The Data Breach**

27.    On or about February 6, 2025, Defendant became aware of a suspicious activity its IT Network.[7] In response, Defendant launched an investigation to determine the nature and scope of the incident.[8]

28.    Upon information and belief, Defendant's investigation determined that the following types of Private Information may have been compromised in the Data Breach: name, address, phone number, email, data of birth, health insurance data (such as health plans/policies, insurance companies, member/group ID numbers, and Medicaid-Medicare-government payor ID number), and health data (such as medical record numbers, doctors, diagnoses, medicines, test results images, care, and treatment).[9]

---

[7] *Notice of Data Breach, supra* note 2.
[8] *Id.*
[9] *Id.*

5

29.    On or around June 6, 2025, Defendant started sending notice letters to impacted individuals.[10]

30.    Defendant failed to take precautions designed to keep individuals' Private Information secure.

31.    While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

32.    Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C. The Defendant Acquires, Collects, and Stores Plaintiff's and Class Members' Private Information.**

33.    As a condition of providing services, Defendant collected Plaintiff and Class Members' sensitive and confidential Private Information.

34.    Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class Members' Private Information, Defendant would be unable to perform its services.

35.    By obtaining, collecting, and storing the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Private Information from disclosure.

36.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

---

[10] *Id.*

CLASS ACTION COMPLAINT

37.    Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class Members.

38.    Upon information and belief, Defendant made promises to Plaintiff and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

39.    Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**D. Defendant Knew or Should Have Known of the Risk of a Cyber Attack Because Healthcare Entities in Possession of Private Information Are Particularly Suspectable to Cyber Attacks**

40.    Data thieves regularly target entities in the healthcare industry like Defendant due to the highly sensitive information that they maintain. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

41.    Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting healthcare entities like Defendant that collect and store Private Information and other sensitive information, preceding the date of the Data Breach.

42.    In light of recent high profile data breaches at other industry-leading companies, including, *e.g.*, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the Private Information that it collected and maintained would be targeted by cybercriminals.

43.     For example, of the 1,862 recorded data breaches in 2021, 330 of them, or 17.7%, were in the medical or healthcare industry.[11]

44.     The 330 breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[12]

45.     When compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that victims were often forced to pay out of pocket costs for healthcare they did not receive in order to restore coverage.[13] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. 40 percent of the patients were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[14]

46.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

47.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to thousands of individuals detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

48.     The injuries to Plaintiff and Class Members were directly and

---

[11] *2021 Data Breach Annual Report*, Identity Theft Resource Center, (Jan. 2022) https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf.
[12] *Id*.
[13] *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.
[14] *See id.*

CLASS ACTION COMPLAINT

proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

49.     The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen fraudulent use of that information and damage to victims may continue for years.

50.     Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiff and Class Members because of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

**E. Defendant Fails to Comply with FTC Guidelines**

51.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

52.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[15]

53.     The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large

---

[15] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

CLASS ACTION COMPLAINT

1  amounts of data being transmitted from the system; and have a response plan ready

2  in the event of a breach.[16]

3    54.    The FTC further recommends that companies not maintain Private

4  Information longer than is needed for authorization of a transaction; limit access to

5  sensitive data; require complex passwords to be used on networks; use industry-tested

6  methods for security; monitor suspicious activity on the network; and verify that third-

7  party service providers have implemented reasonable security measures.

8    55.    The FTC has brought enforcement actions against businesses for failing

9  to adequately and reasonably protect customer data, treating the failure to employ

10  reasonable and appropriate measures to protect against unauthorized access to

11  confidential consumer data as an unfair act or practice prohibited by Section 5 of the

12  Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from

13  these actions further clarify the measures businesses must take to meet their data

14  security obligations.

15    56.    These FTC enforcement actions include actions against healthcare

16  entities, like Defendant. *See, e.g.*, *In the Matter of LabMD, Inc., a corp*, 2016-2 Trade

17  Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he

18  Commission concludes that LabMD's data security practices were unreasonable and

19  constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

20    57.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices

21  in or affecting commerce," including, as interpreted and enforced by the FTC, the

22  unfair act or practice by businesses, such as Defendant, of failing to use reasonable

23  measures to protect Private Information. The FTC publications and orders described

24  above also form part of the basis of Defendant's duty in this regard.

25    58.    Defendant failed to properly implement basic data security practices.

26

27

28  _____

[16] *Id.*

59.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Patients/Employees' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

60.    Upon information and belief, Defendant was at all times fully aware of its obligation to protect individuals' Private Information. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

### F. Defendant Fails to Comply with HIPAA Guidelines

61.    Defendant is a covered businesses under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

62.    Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[17] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

63.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

64.    HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security

---

[17] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

CLASS ACTION COMPLAINT

standards for protecting health information that is kept or transferred in electronic form.

65. HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

66. "Electronic protected health information" is "individually identifiable health information . . . that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

67. HIPAA's Security Rule requires Defendant to do the following:

    a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits.

    b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information.

    c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d. Ensure compliance by its workforce.

68. HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

69. HIPAA and HITECH also obligate Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic PHI that are reasonably anticipated but not

permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

70.    HIPAA requires a covered entity to have and apply appropriate sanctions against Members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R.

§ 164.530(e).

71.    HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of PHI in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

72.    HIPAA also requires the Office of Civil Rights (OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[18] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says, "represent the industry standard for good business practices with respect to standards

---

[18] *Security Rule Guidance Material*, U.S. Dept. of Health and Hum. Services, https://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html (last visited June 18, 2025).

for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[19]

### G. Defendant Owed Plaintiff and Class Members a Duty to Safeguard their Private Information

73.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members.

74.     Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees and others who accessed Private Information within its computer systems on how to adequately protect Private Information.

75.     Defendant owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Private Information in a timely manner.

76.     Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

77.     Defendant owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

78.     Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

---

[19] *Guidance on Risk Analysis*, U.S. Dept. of Health and Hum. Services, Serhttps://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html (last visited June 18, 2025).

**H. The Data Breach Increases Plaintiff's and Class Members' Risk of Identity Theft**

79. The unencrypted Private Information of Plaintiff and Class Members will end up (if it has not already ended up) for sale on the dark web, as that is the *modus operandi* of hackers.

80. Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members.

81. Simply put, unauthorized individuals can easily access the Private Information of Plaintiff and Class Members because of the Data Breach.

82. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

83. Plaintiff's and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members and to profit from their misfortune.

**I. Loss of Time to Mitigate the Risk of Identity Theft and Fraud**

84. As a result of the recognized risk of identity theft, when a data breach occurs and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm.

CLASS ACTION COMPLAINT

85.     Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate the risk of identity theft.

86.     Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords and recurring their own computer systems.

87.     Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[20]

88.     Plaintiff's mitigation efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[21]

89.     And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

---

[20] *See Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. Government Accountability Office, GAO-07-737, (June 2007), https://www.gao.gov/new.items/d07737.pdf ("GAO Report").

[21] *See Steps,* Federal Trade Commission, https://www.identitytheft.gov/Steps (last visited June 18, 2025)

### J. Diminution of Value of Private Information

90.    Private Information is valuable property.[22] Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates, beyond doubt, that Private Information has considerable market value.

91.    The Private Information stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. The information stolen from the Data Breach is difficult, if not impossible, to change.

92.    This kind of data, as one would expect, demands a much higher price on the Dark Web. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[23]

93.    Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[24]

94.    An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[25] In fact,

---

[22] *See* GAO Report, *supra* at 2.

[23] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

[24] *See, e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[25] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, INFOSEC (July 27, 2015), https://www.infosecinstitute.com/resources/healthcare-information-security/hackers-selling-healthcare-data-in-the-black-market/

the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[26,27] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50 a year.[28]

95.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

96.    The fraudulent activity resulting from the Data Breach may not come to light for years.

97.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are incurring and will continue to incur such damage in addition to any fraudulent use of their Private Information.

98.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to millions of individuals detailed Private Information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

---

[26] David Lazarus, *Shadowy Data Brokers Make the Most of Their Invisibility Cloak*, (Nov. 5, 2019), https://www.latimes.com/business/story/2019-11-05/column-data-brokers.

[27] *Home Page*, DATACOUP, https://datacoup.com/ (last visited June 18, 2025).

[28] Mike Brassfield, *This Company Will Pay You $50 This Year for Downloading Its Free App*, (May 31, 2019), https://www.thepennyhoarder.com/make-money/nielsen-panel/#:~:text=Sign%20up%20to%20 join%20the,software%20installed%20on%20your%20computer

99.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

**K. The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary**

100.   Given the type of targeted attack in this case, the sophisticated criminal activity, the volume of data compromised in this Data Breach, and the sensitive type of Private Information involved in this Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes—*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

101.   Such fraud may go undetected until debt collection calls commence months, or even years later. An individual may not know that his or her Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

102.   Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

103.   The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft resulting from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear, but for Defendant's failure to safeguard their Private Information.

### L. Loss of Benefit of Bargain

104.   Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to pay Defendant for the provision of its services and/or providing labor and services for employment, Plaintiff and other reasonable patients and employees understood and expected that they were, in part, providing valuable consideration for the service/employment and necessary data security to protect the Private Information when, in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

### M. Plaintiff Finke's Experience

105.   The plaintiff is a Sharp Healthcare patient who has undergone multiple procedures at Sharp Grossmont Hospital.

106.   Upon information and belief, at the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

107.   Plaintiff is very careful about sharing her sensitive Private Information. The plaintiff stores any documents containing her Private Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

108.   On or about June 6, 2025, Defendant sent Plaintiff a notice of data breach letter ("Notice Letter") informing her that her Private Information was compromised in the Data Breach.

109.   Plaintiff learned of the data breach after reviewing the Notice Letter. According to the Notice Letter, Plaintiff's Private Information was improperly accessed and obtained by unauthorized third parties.

110.   As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including checking her bills and accounts to make sure they were correct. Plaintiff has spent significant time dealing with the Data

Breach, valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

111.   As a result of the Data Breach, Plaintiff fears for her personal financial security and uncertainty over what medical information was revealed in the Data Breach. She is experiencing feelings of anxiety and unease because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

112.   As a result of the Data Breach, Plaintiff has experienced a substantial uptick in spam calls, text messages, and emails.

113.   As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

114.   As a result of the Data Breach, Plaintiff is presently at risk and will continue to be at increased risk of identity theft and fraud for years to come.

115.   Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

116.   As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely

published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (g) other economic and non-economic harm.

**N. Defendant's Failure to Prevent, Identify, and Timely Report the Data Breach**

117.   Defendant admits that unauthorized third persons accessed its network systems. Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

118.   The Private Information that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

119.   Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[29] Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard individuals' sensitive Private Information.

120.   The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[30] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

121.   Here, Defendant waited months after being made aware of the Data Breach to notify impacted individuals.

**O. The Harm Caused by the Data Breach Now and Going Forward**

122.   Victims of data breaches are susceptible to becoming victims of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When "identity thieves have your personal information, they can drain your bank

---

[29] *Protecting Personal Information: A Guide for Business, supra.*
[30] *Id.*

CLASS ACTION COMPLAINT

account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[31]

123.    The type of data that may have been accessed and compromised here can be used to perpetrate fraud and identity theft. Plaintiff and Class Members face a substantial risk of identity theft.

124.    Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

125.    When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web where malicious actors buy and sell that information for profit.[32]

126.    For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity."[33] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[34] As data breaches continue to reveal, "PII about employees, clients and the public are housed in all kinds of organizations, and the

---

[31] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness (last visited June 18, 2025).

[32] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Feb. 1, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring.

[33] *AlphaBay, The Largest Online 'Dark Market,' Shut Down,* U.S. Drug and Enforcement Agency, (July 20, 2017), https://www.dea.gov/press-releases/2017/07/20/alphabay-largest-online-dark-market-shut-down.

[34] *Id.*

increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[35]

127.   PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[36]

128.   According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[37]

129.   Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[38] Defendant did not rapidly report to Plaintiff and Class Members that their Private Information had been stolen. Defendant notified impacted people more than two months after learning of the Data Breach.

130.   As a result of the Data Breach, the Private Information of Plaintiff and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered as a direct result of Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting

---

[35] *Id.*
[36] *Id.*
[37] *2019 Internet Crime Report Released*, FBI (Feb. 11, 2020) https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120 (last visited June 18, 2025).
[38] *Id.*

from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

131. In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

132. Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, wilfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to safeguard Plaintiff's and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

133. The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services,

purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

## **CLASS ACTION ALLEGATIONS**

134.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

### **Nationwide Class**

All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Defendant in June 2025 (the "Class").

### **California Subclass**

All individuals residing in the State of California whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Defendant in June 2025 (the "California Subclass").

135.    Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

136.    Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

137.    This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

138. <u>Numerosity</u>: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

139. <u>Typicality of Claims</u>: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members, which was caused by the same misconduct by Defendant.

140. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

<u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

<u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

CLASS ACTION COMPLAINT

a.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

b.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations.

c.  Whether Defendant's storage of Plaintiff's and Class Member's Private Information was done in a negligent manner.

d.  Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' Private Information.

e.  Whether Defendant's conduct was negligent.

f.  Whether Defendant's conduct violated Plaintiff's and Class Members' privacy.

g.  Whether Defendant's conduct violated the statutes as set forth herein.

h.  Whether Defendant took sufficient steps to secure individuals' Private Information.

i.  Whether Defendant was unjustly enriched; and

j.  The nature of relief, including damage and equitable relief, to which Plaintiff and Class Members are entitled.

141.    Information concerning Defendant's policies is available from Defendant's records.

142.    Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

143.    The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible

28

CLASS ACTION COMPLAINT

standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

144.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

145.    Given that the Defendant had not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION
### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

146.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

147.    Plaintiff brings this claim individually and on behalf of the Class Members.

148.    Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

149.    Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

150.    Defendant had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' Private Information within its possession was compromised and precisely the types of information that were compromised.

151.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from

statutory authority like Section 5 of the FTC Act, HIPAA, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected individuals' Private Information.

152.   Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its clients. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

153.   Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

154.   Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information.

155.   The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

      a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information.

      b.  Failing to adequately monitor the security of its networks and systems; and

      c.  Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

156.   Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

157.   Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Private Information.

158.   Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within Defendant's possession might have been compromised and precisely the type of information compromised.

159.   Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the National Institute of Standards and Technology's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Members' Private Information. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the personal patient information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

160.   It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

161.   It was foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would result in injuries to Plaintiff and Class Members.

162.   Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised.

163.    But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

164.    As a result of Defendant's failure to timely notify Plaintiff and Class Members that their Private Information had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

165.    As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

### COUNT II
### UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Nationwide Class)

166.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth, as though fully set forth herein.

167.    Plaintiff and Class Members conferred a benefit upon Defendant when Defendant obtained their Private Information to render services.

168.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff. Defendant also benefited from the receipt of Plaintiff's and Class

---

CLASS ACTION COMPLAINT

Members' Private Information, as this was used for Defendant to administer its services to Plaintiff and the Class.

169. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class Members' services and their Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the proposed Class would not have provided their Private Information to Defendant or utilized its services had they known Defendant would not adequately protect their Private Information.

170. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

### COUNT III
### BREACH OF IMPLIED CONTRACT
**(On behalf of Plaintiff and the Nationwide Class)**

171. Plaintiff incorporates by reference and re-alleges each and every allegation set forth, as though fully set forth herein.

172. Plaintiff and Class Members were required to deliver their Private Information to Defendant as part of the process of obtaining services from Defendant. Plaintiff and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services.

173. Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

174. Defendant accepted possession of Plaintiff and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

175. Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by

which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

176.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

177.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

178.    The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

179.    On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relates to the Data Breach.

180.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff and Class Members' Private Information would remain protected.

CLASS ACTION COMPLAINT

181.  Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

182.  Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

183.  Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

184.  Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

185.  Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

186.  Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

187.  Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

188.   As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) actual misuse of their Private Information consisting of an increase in spam calls, texts, and/or emails; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

189.   Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

190.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## COUNT IV
### CALIFORNIA UNFAIR COMPETITION LAW
#### Cal. Bus. & Prof. Code §§ 17200, et seq.
#### (On Behalf of Plaintiff and the California Subclass)

191.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

192.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

193.   Defendant violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

194.   Defendant's "unfair" acts and practices include:

195.   Defendant failed to implement and maintain reasonable security measures to protect Plaintiff's and Subclass Members' Private Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach.

196.   Defendant failed to identify foreseeable security risks, remediate identified security risks, and sufficiently improve security following previous cybersecurity incidents, as described herein. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and Subclass Members, whose Private Information has been compromised.

197.   Defendant's failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code § 1798.81.5, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100.

198.   Defendant failures to implement and maintain reasonable security measures also resulted in substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not have known Defendant's inadequate security, consumers could not have reasonably avoided the harm that Defendant caused.

199.   Defendant engaged in unlawful business practices by violating Cal. Civ. Code § 1798.82.

200.   Defendant has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§

1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), the FTC Act, 15 U.S.C. § 45, and California common law.

201.    Defendant's unlawful, unfair, and deceptive acts and practices include:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Class Member Private Information, which was a direct and proximate cause of the Data Breach.

b.    Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach.

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach.

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' Private Information, including by implementing and maintaining reasonable security measures.

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information including duties imposed by the FTC Act, 15 U.S.C. § 45; and

f.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Consumer Privacy Act, Cal. Civ. Code § 1798.100, California's Consumer Records Act, Cal. Civ. Code § 1798.80, et seq., and § 1798.81.5, which was a direct and proximate cause of the Data Breach.

202.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of individuals' Private Information.

203.   As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members were injured and suffered monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendant's services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

204.   Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair and unlawful business practices or use of their Private Information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## COUNT V
## CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT
### Cal. Civ. Code §§ 56 *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

205.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

206.   Plaintiff is a "patient" as defined in Cal. Civ. Code § 56.05(m), and Defendant is "a provider of health care," as defined in Cal. Civ. Code § 56.06; thus, Defendant is subject to the requirements of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10(a), (d) and (e), 56.36(b), 56.101(a) and (b).

207.   At all relevant times, Defendant was a health care provider because it had the "purpose of maintaining medical information to make the information available to the individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manager his or her information, or for the diagnosis or treatment of the individual."

208.   As a provider of health care or a contractor, Defendant is required by the CMIA to ensure that medical information regarding patients is not disclosed or disseminated or released without patient's authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, 56.36, and 56.101.

209.   As a provider of health care or a contractor, Defendant is required by the CMIA not to disclose medical information regarding a patient without first obtaining an authorization under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, and 56.104.

210.   Defendant is a person licensed under California under California's Business and Professions Code, Division 2. See Cal. Bus. Prof. Code §§ 4000 *et seq*.

211.   Plaintiff and California Subclass Members are "patients" as defined in Cal. Civ. Code § 56.05(m) ("'Patient' means a natural person, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains."). Furthermore, Plaintiff and California Subclass Members, as patients and customers of Defendant, had their individually identifiable "medical information," within the meaning of Cal. Civ. Code § 56.05(j), created, maintained, preserved, and stored on Defendant's computer network, and were patients on or before the date of the Data Breach.

212.   Defendant disclosed "medical information," as defined in CMIA, Cal. Civ. Code 196. § 56.05(j), to unauthorized persons without first obtaining consent, in violation of Cal. Civ. Code § 56.10(a). The disclosure of information to unauthorized individuals in the Data Breach resulted from the affirmative actions of Defendant's

employees, which allowed the hacker to see and obtain Plaintiff and California Subclass Members' medical information.

213.   Defendant negligently created, maintained, preserved, stored, and then exposed Plaintiff and California Subclass Members' individually identifiable "medical information," within the meaning of Cal. Civ. Code § 56.05(j), including Plaintiff and California Subclass Members' names, cities, states, zip codes, emails, telephone numbers, dates of birth, gender, patient service dates, patient service locations, and next appointment dates, that alone or in combination with other publicly available information, reveals their identities. Specifically, Defendant knowingly allowed and affirmatively acted in a manner that allowed unauthorized parties to access and actually view Plaintiff and California Subclass Members' confidential Private Information.

214.   Defendant's negligence resulted in the release of individually identifiable medical information pertaining to Plaintiff and California Subclass Members to unauthorized persons and the breach of the confidentiality of that information. Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff and California Subclass Members' medical information in a manner that preserved the confidentiality of the information contained therein, in violation of Cal. Civ. Code §§ 56.06 and 56.101(a).

215.   Defendant also violated Sections 56.06 and 56.101 of the CMIA, which prohibits the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

216.   Plaintiff and California Subclass Members' medical information was accessed, removed, and actually viewed by a hacker and other unauthorized parties during and following the Data Breach.

217.   Plaintiff and California Subclass Members' medical information that was the subject of the Data Breach included "electronic medical records" or

"electronic health records" as referenced by Civil Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

218.   Defendant's computer systems did not protect and preserve the integrity of electronic medical information in violation of Cal. Civ. Code § 56.101(b)(1)(A). As a direct and proximate result of Defendant's above-noted wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, and violation of the CMIA, Plaintiff and the California Subclass Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia, (a) present, imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (b) invasion of privacy, (c) breach of the confidentiality of the PHI, (d) statutory damages under the CMIA, (e) deprivation of the value of their PHI, for which there is well-established national and international markets, and/or, (f) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

219.   As a direct and proximate result of Defendant's wrongful actions, inaction, omission, and want of ordinary care that directly and proximately caused the release of Plaintiff and California Subclass Members' Private Information, Plaintiff and California Subclass Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff and California Subclass Members' written authorization.

220.   Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff and California Subclass Members' medical information in a manner that preserved the confidentiality of the information contained therein violated the CMIA.

221.   Plaintiff and the California Subclass Members were injured and have suffered damages, as described above, from Defendant's illegal and unauthorized

CLASS ACTION COMPLAINT

disclosure and negligent release of their medical information in violation of Cal. Civ. Code §§ 56.10 and 56.101, and therefore seek relief under Civ. Code §§ 56.35 and 56.36, which allows for actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorneys' fees, expenses and costs

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and her counsel as Class Counsel.

(b)    For an order declaring that Defendant's conduct violates the laws referenced herein.

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein.

(d)    For damages in amounts to be determined by the Court and/or jury.

(e)    For an award of statutory damages or penalties to the extent available.

(f)    For pre-judgment interest on all amounts awarded.

(g)    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law.

(h)    For an order of restitution and all other forms of monetary relief; and

(i)    Such other and further relief as the Court deems necessary and appropriate.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: June 18, 2025,                    Respectfully submitted,

                                         /s/ Tina Wolfson
                                         Tina Wolfson (SBN 174806)
                                         *twolfson@ahdootwolfson.com*
                                         Theodore W. Maya (SBN 223242)
                                         *tmaya@ahdootwolfson.com*
                                         Alyssa Brown (SBN 301313)
                                         *abrown@ahdootwolfson.com*
                                         Sarper Unal (SBN 341739)
                                         *sunal@ahdootwolfson.com*
                                         **AHDOOT & WOLFSON, PC**
                                         2600 West Olive Avenue, Suite 500
                                         Burbank, CA 91505
                                         Tel: (310) 474-9111
                                         Fax: (310) 474-8585

                                         *Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT